**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**PHILLIP CLAYTON,**

                **Plaintiff,**           **1:10-cv-1412
                                                   (GLS/CFH)**

      v.

**NEW VISIONS,**

                **Defendant.**
_____

**APPEARANCES:**                   **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Phillip Clayton
Pro Se
164-04 109th Avenue
Jamaica, NY 11433

**FOR THE DEFENDANT:**
Bond, Schoeneck Law Firm - Albany    JOHN M. BAGYI, ESQ.
111 Washington Avenue                   MICHAEL D. BILLOK, ESQ.
Albany, NY 12210-2280

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* Phillip Clayton commenced this action against

defendant New Visions, alleging violations of, *inter alia*, Title VII of the Civil

Rights Act of 1964.[1]  (*See* Compl., Dkt. No. 1.)  Pending is New Visions' motion for summary judgment.  (*See* Dkt. No. 32.)  For the reasons that follow, the motion is granted.

## II. Background[2]

New Visions, which is the Albany Chapter of NYSARC, Inc., provides community-based programs to "*persons with differing abilities and their families.*"  (Def.'s Statement of Material Facts (SMF) ¶¶ 23-25, Dkt. No. 34.)  One such program is New Visions' "day training program that provides janitorial services to certain State and Federal agencies."  (*Id.* ¶ 26.)  Clayton applied to this program on January 21, 2009, and interviewed with the program's director, Charles Williams.  (*See id.* ¶¶ 26-27.)  During the course of the hiring process, Clayton, whose race was "self-evident," disclosed his criminal record and history of drug addiction.  (*Id.* ¶ 29.)  Undeterred by these factors, Williams, in accordance with New Visions' equal opportunity employment policy, offered Clayton a janitorial position at

---

[1] *See* 42 U.S.C. § 2000e *et seq.*

[2] Notwithstanding Clayton's failure to respond, New Visions' assertions are properly supported by admissible evidence, and thus, are deemed admitted pursuant to Fed. R. Civ. P. 56(e)(2) and N.D.N.Y. L.R. 7.1(a)(3).  As there are no factual disputes, the court provides a summary of the facts, and refers the parties to New Visions' Statement of Material Facts for a full discussion thereof.  (*See* Dkt. No. 34.)

2

the W. Averell Harriman State Office Campus ("State Campus"), beginning March 30, 2009. (*See id.* ¶¶ 28, 30-32.)

Shortly after he started work at the State Campus, Clayton was found "in an unoccupied office using his own personal laptop computer." (*Id.* ¶ 33.) Clayton was neither authorized to be in that particular office, which belonged to the Regional Director of FEMA, nor to use others' office space for personal use. (*See id.* ¶¶ 34-36.) Consequently, Clayton was suspended for three days without pay. (*See id.* ¶ 37.) But after he appealed his suspension, Williams determined that the punishment was too harsh, and paid Clayton for the days he was suspended. (*See id.* ¶¶ 38-39.)

On October 7, 2009, just three months after the former incident, Clayton was observed by the Building Manager of the State Campus reading a newspaper "on an unoccupied office floor to which he was not assigned, at a time he was supposed to be sweeping a stairwell." (*Id.* ¶¶ 41, 43.) Pursuant to the State's contract with New Visions, the Building Manager requested that Clayton be removed from the State Campus. (*See id.* ¶¶ 44-45.) New Visions complied with the request, but, after doing so, was unable to find another position for Clayton. (*See id.* ¶¶ 46-47.)

3

Accordingly, Clayton's employment was terminated. (*See id.* ¶ 47.)

Clayton commenced this action against New Visions, and several individual defendants, on November 22, 2010, alleging claims of discrimination—on the bases of race, criminal history, and addiction history—and hostile work environment. (*See* Compl. at 2-3.) Before filing an Answer, defendants filed a motion to dismiss, which Clayton did not oppose. (*See* Def's SMF ¶¶ 7-14; Dkt. No. 8.) By Text Only Order dated September 30, 2011, the court granted defendants' motion to dismiss with respect to the individual defendants, and denied the remainder of the motion. After discovery closed, New Visions filed this motion, included with which was the requisite notification to Clayton on the consequences of failing to respond. (*See* Dkt. Nos. 32-37.) In addition to that notice, the court not only provided Clayton with a separate letter and notice of consequences, but also *sua sponte* granted him additional time to respond. (*See* Dkt. Nos. 38-40.) To date, he has failed to do so.

### III. <u>Standard of Review</u>

The standard of review under Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d

4

85, 92 (N.D.N.Y. 2011).

## IV.  Discussion

New Visions argues that it is entitled to summary judgment because Clayton cannot establish a prima facie case of discrimination, and, even if he can, is unable to disprove that he was terminated for a legitimate, non-discriminatory reason.  (*See* Dkt. No. 35 at 5-13.)  It further asserts that there is no evidence of a hostile work environment.  (*See id.* at 13-16.)  Because there are no genuine issues of material fact, and the court concurs with New Visions' arguments in support of its motion, a summary discussion of Clayton's claims is sufficient.  (*See generally* Dkt. Nos. 32-35.)

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In analyzing claims of race discrimination, courts apply the *McDonnell Douglas* burden-shifting rules, which place upon the plaintiff the initial burden of making out a prima facie case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  A plaintiff must satisfy this burden by showing: "(1) membership in a protected class; (2)

5

satisfactory job performance; (3) termination from employment or other adverse employment action;" and, as is relevant here, (4) that "the discharge or adverse employment action occurred under circumstances giving rise to an inference of discrimination" based on the plaintiff's membership in a protected class. *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). With respect to the second prong, the plaintiff need not demonstrate perfect, or even average, performance; rather, he must simply "show that his performance was of sufficient quality to merit continued employment." *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978) (internal quotation marks and citation omitted). "Although misconduct indicates a high likelihood that an employee's performance is not satisfactory . . . it is at least theoretically possible that an employee committed some misconduct and yet, in the aggregate, performed satisfactorily." *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29-30 (2d Cir. 1997).

By establishing his prima facie case, the plaintiff not only creates "a presumption of unlawful discrimination," but also "shifts the burden of production to the defendant, who must [then] proffer a 'legitimate, nondiscriminatory reason for the challenged employment action."

6

*Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks and citations omitted).  If the defendant does so, the burden shifts back to the plaintiff to show, by a preponderance of the evidence and without the benefit of the presumption, that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  This showing may be made "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id.* at 256.

Here, New Visions offered uncontested proof that Clayton was terminated after he twice violated company policy, and was removed, at the request of the Building Manager, from his position at the State Campus. (*See* Def.'s SMF ¶¶ 33-47.)  Moreover, there is no evidence that Clayton's termination had anything to do with any of his protected characteristics.[3] (*See* Dkt. No. 35 at 6-8.)  Thus, on the basis of the record before it, the court concludes that Clayton has failed to establish a prima facie case of

---

[3] Indeed, it is reasonable to infer that despite his transgressions, New Visions would have continued Clayton's employment had a position been available.  (*See* Def.'s SMF ¶ 47; Dkt. No. 33 ¶ 25.)

7

discrimination.[4]

Turning to Clayton's allegations of a hostile work environment, the court is similarly unconvinced that such an environment existed. To establish a prima facie case of hostile work environment, Clayton "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks and citation omitted). Clayton has done neither here. While he alleged that his supervisor, who was also African American, used a derogatory term at work, Clayton admitted at his deposition that Williams informed the supervisor to stop using the so-called "street talk," and the supervisor not only ceased, but also later apologized for his choice of vocabulary. (Def.'s SMF ¶¶ 69-74; Dkt. No. 32, Attach. 3 at 37:20-39:23.) Needless to say, this admission belies Clayton's claim.

In sum, despite Clayton's failure to "offer specific evidence showing that a genuine issue of material fact warrants a trial," *Wagner*, 827 F. Supp.

---

[4] Even if Clayton had responded, and included the requisite proof to raise an inference of discrimination—which seems unlikely since he elected not to depose any of New Visions' employees, (*see* Def.'s SMF ¶ 21), the record is devoid of any evidence that suggests that Clayton was terminated for an illegitimate, discriminatory reason.

8

2d at 92, there is simply no evidence in the record to support any of his claims. As such, New Visions' motion for summary judgment is granted.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the New Visions' motion for summary judgment (Dkt. No. 32) is **GRANTED**; and it is further

**ORDERED** that the Clerk shall close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 21, 2012
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court